**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WOW TECH USA, LTD., | |
| Plaintiff, | Civil Action No. _____ |
| v. | **Demand For Jury Trial** |
| EIS, INC., | |
| Defendant. | |

## COMPLAINT

Plaintiff, WOW Tech USA, Ltd., ("WOW Tech" or "Plaintiff"), for its Complaint against Defendant EIS Inc. ("EIS" or "Defendant"), hereby allege as follows:

## THE PARTIES

1. WOW Tech is a Delaware corporation having a mailing address at 103 Foulk Road, Suite 202, Wilmington, Delaware, 19803.

2. On information and belief, EIS is a Delaware corporation, having a principal place of business at 110 Wall Street, New York, New York, 10005.

## JURISDICTION AND VENUE

3. This civil action arises under the laws of the United States, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Delaware Uniform Deceptive Trade Practices Act (6 *Del. C.* § 2531 et seq.), and Delaware common law prohibitions on unfair competition and false advertising.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's first cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and this Court has supplemental jurisdiction over Plaintiff's remaining Delaware state statutory and common law claims under 28 U.S.C. § 1367 because such claims are so related to

the claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) that they form part of the same case or controversy under Article III of the United States Constitution.

5.    On information and belief, Defendant conducts business in interstate commerce in the United States and the State of Delaware.

6.    On information and belief, the claims alleged herein arise from Defendant's acts or omissions in the United States and the State of Delaware, and/or acts or omissions having substantial effects in the United States and the State of Delaware.

7.    On information and belief, Defendant has purposefully directed its activities to residents of the United States and the State of Delaware.

8.    Defendant's acts and omissions have damaged Plaintiff and its property in the United States and Delaware.

9.    Venue is proper in the U.S. District Court for the District of Delaware pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is a "resident" of Delaware.

## ACTS GIVING RISE TO THIS ACTION

10.    Defendant has a history of making false and unfounded allegations of unfair and deceptive trade practices against Plaintiff with the intent to prevent or limit the commercial success of Plaintiff's products in the United States and globally.

11.    Defendant also has a history of willfully infringing patents owned by Plaintiff's related company Novoluto GmbH.  In the related action in this Court captioned *EIS, Inc. v. IntiHealth Ger GmbH*, C.A. No. 19-1227-GBW (D. Del.) (hereinafter "the Patent Infringement Case"), Defendant was found by a Delaware jury to have willfully infringed patents owned by Novoluto GmbH by reason of Defendant's sales of a category of sex toys referred to by, and advertised and promoted by, Defendant as its "Air Pulse" products, which are the same products involved in this action.

2

12. On information and belief, Andre Geske is the 100% owner of the ultimate parent company of Defendant EIS, Inc., the ultimate owner of Defendant EIS, Inc., and is the sole decision maker on all major decisions made by Defendant EIS, Inc. Andre Geske threatened to and did in fact "wage war world wide" (*i.e.*, launched a litigation campaign) against Michael Lenke, the inventor of Novoluto GmbH's[1] patented Womanizer® product, and Mr. Lenke's company and their successors (including WOW Tech), when Mr. Lenke refused to let Andre Geske sell the Womanizer® product on Andre Geske's website, and further when Mr. Lenke's successors refused to grant Andre Geske and his companies a free world-wide patent license.  Andre Geske planned, instructed, authorized, and controlled the filing in this Court of the failed related case *EIS, Inc. v. IntiHealth Ger GmbH*, *et. al,* C.A. No. 19-1227-GBW (D. Del.), and three failed *inter partes* reviews (IPR2019-01302, IPR2019-01444, and IPR2020-00007) in the United States Patent and Trademark Office against three of Novoluto's patents.

13. On information and belief, beginning shortly after the jury verdict in the Patent Infringement Case, Andre Geske began contacting distributors and retailers in the sex entertainment industry, some of which are Plaintiff's existing distributors and retailers, about the jury verdict.

14. Post-trial motions filed by the parties in the Patent Infringement Case are pending.

15. There has been no settlement of any issues between the parties to the Patent Infringement Case.

---

[1] Novoluto GmbH ("Novoluto") is a sister company to Plaintiff WOW Tech in this case and owns the Womanizer patents that were the subject of Novoluto's successful patent infringement allegations against EIS and its affiliates in the related Patent Infringement Case, *EIS, Inc. v. IntiHealth Ger GmbH*, *et. al,* C.A. No. 19-1227-GBW (D. Del.), which resulted in a jury verdict finding EIS and its affiliates liable for willful infringement of all five Novoluto patents-in-suit.

16. There have been no settlement discussions or negotiations of any kind regarding any issues between the parties to the Patent Infringement Case.

17. On information and belief, in his post-verdict communications with distributors and retailers in the sex toy industry, Andre Geske stated that the September jury verdict in the Patent Infringement Case gave Defendant a fully paid-up license for the lifetime of Novoluto's patents-in-suit, which license allows Defendant and distributors and retailers to continue selling all of Defendant's infringing Air Pulse products in the United States, including new-yet-materially-identical products Defendant has released and continues to introduce to the market since trial in the Patent Infringement Case.

18. In addition to and after having released the 46 Accused Products that were identified in the Patent Infringement Case, Defendant has introduced, promoted, advertised, and otherwise marketed at least the following new-yet-materially-identical products to the relevant purchasing community, nearly half of which Defendant released *after* the jury verdict of willful patent infringement in that case:

- Satisfyer Marvelous Four,

- Satisfyer Sugar Rush,

- Satisfyer Pearl Diver,

- Satisfyer Cutie Heart,

- Satisfyer Cotton Candy,

- Pro 2 Generation 3,

- Satisfyer Orca,

- Satisfyer Cloud Dancer,

- Satisfyer Penguin Holiday Edition,

4

- Pro 2 Classic Blossom,

- Pro 2 Modern Blossom.

19. On information and belief, the foregoing post-trial statements by Andre Geske were authorized, directed, approved, and ratified by Defendant.

20. On information and belief, the above-identified post-trial statements by Andre Geske were made in the course of Defendant's advertising and promotion of its Air Pulse products, including such products found by a Delaware jury to willfully infringe Novoluto's patents-in-suit in the Patent Infringement Case.

21. Andre Geske's above-identified post-trial statements were literally false and known by Andre Geske to be literally false when he made them.

22. Andre Geske's above-identified post-trial statements were deceptive and misleading and known by Andre Geske to be deceptive and misleading to retailers and distributors in the sex toy industry when he made them.

23. Andre Geske's post-trial statements to distributors and retailers that the September jury verdict in the Patent Infringement Case gave Defendant a fully paid-up license for the lifetime of the patents-in-suit, which allows Defendant and distributors to continue to sell all Air Pulse products in the United States, were made for the purpose of generating and increasing sales of Defendant's Air Pulse products that have been found by a Delaware jury to willfully infringe Novoluto's patents, and harming Plaintiff's sales of Plaintiff's own patented products covered by those Novoluto patents.

24. Plaintiff and Defendant are direct competitors in the field of sex toys, both in the United States and globally.

25.    Plaintiff and Defendant both attend and conduct advertising, promotion, and sales activities at sex entertainment industry business-to-business ("B2B") trade shows.

26.    Plaintiff and Defendant both meet new prospective distributors and retailers, establish new supplier-customer relationships, and negotiate and conclude new sales and distribution agreements at, or in conjunction with, such B2B trade shows.

27.    A substantial percentage of Plaintiff's total annual sales in the United States and elsewhere is generated at, or in conjunction with, such B2B trade shows.

28.    On information and belief, a substantial percentage of Defendant's total annual sales in the United States and elsewhere is generated at, or in conjunction with, such B2B trade shows.

29.    The ANME Founders Show is a key B2B trade show in the sex entertainment industry and is held twice each year.

30.    The first ANME Founders Show of 2024 was held from January 7 through January 10, 2024, in Burbank, California.

31.    On information and belief, Jeff Garlow is President of Defendant.

32.    On information and belief, during the January 2024 ANME Founders Show, Jeff Garlow stated to multiple distributors that there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell all Air Pulse products in the United States without any issues and without having to pay any royalties.  Jeff Garlow disseminated these statements so widely and to so many distributors at the January 2024 ANME Founders Show that at least three different individuals from three different distributors approached WOW Tech at the show to ask if Jeff Garlow's representations were true, and others have approached WOW Tech since then regarding the same representations.

6

33.     Jeff Garlow's statements made to distributors at the January 2024 ANME Founders Show that there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell all Air Pulse products in the United States were literally false when made.

34.     On information and belief, Jeff Garlow's statements made to distributors at the January 2024 ANME Founders Show that there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell all Air Pulse products in the United States were authorized, directed, approved, and ratified by Defendant and/or Andre Geske.

35.     Jeff Garlow's statements made to distributors at the January 2024 ANME Founders Show that there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell all Air Pulse products in the United States were made in the course of Defendant's advertising and promotion of its Air Pulse products.

36.     Jeff Garlow's statements made to distributors at the January 2024 ANME Founders Show that there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell all Air Pulse products in the United States were made for the purpose of generating and increasing sales of Defendant's Air Pulse products that have been found by a Delaware jury to infringe Novoluto's patents, and harming Plaintiff's sales of Plaintiff's own patented products covered by those Novoluto patents.

37.     XBIZ LA is a key B2B trade show in the sex entertainment industry.

38.     The XBIZ LA trade show was held from January 15 through January 18, 2024 in Hollywood, California.

39.     On information and belief, during or in connection with the January 2024 XBIZ LA trade show, Jeff Garlow stated to multiple distributors that there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell all Air Pulse products in the United States.

40.     On information and belief, during or in connection with the January 2024 XBIZ LA trade show, Jeff Garlow stated to multiple distributors that Defendant will have use of Novoluto's patents for 14 years.

41.     On information and belief, during or in connection with the January 2024 XBIZ LA trade show, Jeff Garlow stated to multiple distributors that everything would be settled in the United States and that none of Defendant's Air Pulse products will be "going away" in the United States, and thus it is "business as usual" with respect to Defendant's Air Pulse products.

42.     All of Jeff Garlow's foregoing statements made to distributors at the January 2024 XBIZ LA trade show were literally false when made.

43.     On information and belief, all of Jeff Garlow's foregoing statements made to distributors at the January 2024 XBIZ LA trade show were authorized, directed, approved, and ratified by Andre Geske and/or Defendant.

44.     All of Jeff Garlow's foregoing statements made to distributors at the January 2024 XBIZ LA trade show were made in the course of Defendant's advertising and promotion of its Air Pulse products.

45.     All of Jeff Garlow's foregoing statements made to distributors at the January 2024 XBIZ LA trade show were made for the purpose of generating and increasing sales of Defendant's Air Pulse products that have been found by a Delaware jury to infringe Novoluto's patents, and harming Plaintiff's sales of Plaintiff's own patented products covered by those Novoluto patents.

46. To any extent that any of Jeff Garlow's above-mentioned statements made to distributors at the January 2024 ANME Founders Show and the January 2024 XBIZ LA trade show were not literally false when made, they were highly misleading.

47. Defendant's conduct, through statements made by its President, Jeff Garlow, is unlawful, unfair, anticompetitive, and has injured and continues to injure Plaintiff.

**<u>FIRST COUNT –</u>**
**<u>UNFAIR COMPETITION</u>**
**<u>LANHAM ACT § 43(a), 15 U.S.C. § 1125(a)</u>**

48. Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

49. Defendant and its agent Jeff Garlow and its ultimate owner Andre Geske have willfully and knowingly made literally false, misleading statements about Plaintiff, Defendant's Air Pulse products, and the Patent Infringement Case.

50. Defendant's statements made by its ultimate owner Andre Geske and its President Jeff Garlow at key trade shows were intended to deceive and did deceive, or were likely to deceive, distributors and retailers in the sex entertainment industry that the pending Patent Infringement Case is not any obstacle to Defendant's continued marketing, promotion, manufacture, and sale of its Air Pulse products that have been found by a Delaware jury to infringe Novoluto's patents.

51. Defendant's false and/or misleading statements made by its ultimate owner Andre Geske and its President Jeff Garlow at key trade shows amount to actual deception or have at least a tendency to deceive a substantial portion of the intended audience into believing that the pending Patent Infringement case will not have any effect on Defendant's continued ability to sell in the United States, and supply to distributors in the United States, its Air Pulse products.

52. Defendant's false and/or misleading statements made by its ultimate owner Andre Geske and its President Jeff Garlow at key trade shows are material in that they are made for the purpose of influencing, and are likely to influence, purchasing decisions by U.S. sex entertainment

9

industry distributors and retailers to purchase Defendant's Air Pulse products instead of Plaintiff's legitimate, authorized, patented competing sex toy products.

53.    Plaintiff's statements made by its ultimate owner Andre Geske and its President Jeff Garlow at key trade shows constitute "commercial advertising or promotion" under 15 U.S.C. § 1125(a)(1)(B) as follows:

    a.    They are commercial speech by Defendant's agent, its President Jeff Garlow, and/or authorized, directed, approved, and ratified by Defendant and/or by its ultimate owner Andre Geske;

    b.    Plaintiff and Defendant are in direct commercial competition for the sale of sex toys in the sex entertainment industry;

    c.    Defendant's statements were made for the purpose of influencing customers including retailers and distributors of sex toy products to buy Defendant's Air Pulse products that have been found by a Delaware jury to infringe Novoluto's patents, instead of buying Plaintiff's legitimate, authorized, patented competing sex toy products; and

    d.    On information and belief, Defendant's statements have been disseminated sufficiently to the relevant purchasing public, namely, sex entertainment industry retailers and distributors attending major industry trade shows including the January 2024 ANME Founders Show and the January 2024 XBIZ LA trade show.

54.    The foregoing false and/or misleading statements by Defendant through its ultimate owner Andre Geske and its President Jeff Garlow have injured and are likely to further injure

Plaintiff because Defendant has already generated confusion about whether Defendant's Air Pulse products will be available in the United States despite having been found by a Delaware jury in the Patent Infringement Case to have willfully infringed Novoluto's U.S. patents.

55. The foregoing false and/or misleading statements by Defendant through its ultimate owner Andre Geske and its President Jeff Garlow have also harmed and continue to harm Plaintiff's business relationships and goodwill with retailers and distributors who are its customers and prospective customers.

56. For all of the foregoing facts, reasons, and circumstances, Plaintiff is entitled to recover the damages sustained by Plaintiff in an amount to be determined at trial, which damages may be increased by up to three times by this Court according to the circumstances of the case, disgorged profits from Defendant, and/or the costs of this action, pursuant to 15 U.S.C. § 1117(a).

57. For all of the foregoing facts, reasons, and circumstances, Plaintiff is also entitled to an award of its reasonable attorneys' fees, costs, and prejudgment interest.

58. Unless permanently enjoined by the Court, Defendant's actions will continue to cause irreparable harm to Plaintiff for which there is no adequate remedy at law and, as a result, Plaintiff is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

<u>**SECOND COUNT –**</u>
<u>**DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT**</u>
**6 *DEL. C.* § 2531 *ET SEQ.***

59. Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

60. Defendant has engaged in deceptive trade practices by making false and/or misleading statements about its ability to manufacture, market, promote, and sell its Air Pulse products in the United States, including without limitation that, notwithstanding the pending post-trial motions in the Patent Infringement case, and notwithstanding that there has not been any, and there is no current, settlement discussion between the parties to the Patent Infringement case:

a. there would be a settlement deal between the parties to the Patent Infringement Case that will allow Defendant to continue to sell its Air Pulse products in the United States without any issues;

b. Defendant will have use of Novoluto's patents for 14 years; and

c. Everything would be settled in the United States and that none of Defendant's Air Pulse products will be "going away" in the United States, and thus it is "business as usual" with respect to Defendant's Air Pulse products.

61. All of these statements are literally false and/or misleading, as all issues in the Patent Infringement case regarding Defendant's infringing Air Pulse products remain pending in this Court.

62. Defendant's actions, false statements, and misrepresentations, individually or taken together, are likely to cause confusion, deception, or misunderstanding and constitute violations of, inter alia, 6 *Del. C.* § 2532(a)(5), (a)(7), (a)(8), and (a)(12).

63. Defendant's deceptive trade practices have confused and deceived, and will continue to confuse and deceive, Plaintiff's customers and potential customers of Plaintiff's legitimate, authorized, patented competing sex toy products. Defendant's conduct has also harmed and continues to harm Plaintiff's business relationships and goodwill with retailers and distributors who are its customers and prospective customers.

64. Defendant's deceptive trade practices have been deliberate and willful.

65. For the reasons set forth in the First Count, Plaintiff is entitled to recover the damages sustained by Plaintiff in an amount to be determined at trial, which damages may be

trebled by this Court pursuant to 6 *Del. C.* § 2533, as well as an award of its attorneys' fees and costs.

66.    Unless permanently enjoined by the Court, Defendant's actions will continue to cause irreparable harm to Plaintiff for which there is no adequate remedy at law and, as a result, Plaintiff is entitled to permanent injunctive relief pursuant to 6 *Del. C.* § 2533.

**THIRD COUNT –
UNFAIR COMPETITION
DELAWARE COMMON LAW**

67.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

68.    Prior to Defendant's actions, Plaintiff had a reasonable expectancy of entering into valid business relationships with retailers and distributors of Plaintiff's legitimate, authorized, patented sex toy products with whom Plaintiff has existing relationships.

69.    Defendant wrongfully interfered with Plaintiff's business relationships by engaging in unfair and deceptive conduct, including by making false and/or misleading statements regarding the status and outcome of the Patent Infringement Case as between the parties thereto, and the effect of that status and outcome on the continued availability in the United States of Defendant's Air Pulse products found by a Delaware jury to infringe Novoluto's patents.

70.    As a result of Defendant's wrongful, deliberate, and intentional actions, Plaintiff's reasonable expectations of continuing and expanded business relationships with existing and/or prospective customers, including retailers and distributors of Plaintiff's sex toy products, have been damaged, as illustrated by the need to correct and dispel Defendant's false statements within the relevant purchasing community.  Defendant has generated confusion about which sex toy products will be available for purchase in the future, to Plaintiff's detriment.  Defendant has impacted retailer and distributor demand for Plaintiff's patent products by falsely stating that the

13

Patent Infringement Case has been settled resulting in Defendant's 14-year freedom to use the Novoluto patents it has been found to have willfully infringed by a Delaware jury.

71. Defendant's conduct has also harmed and continues to harm Plaintiff's business relationships and goodwill with retailers and distributors who are its customers and prospective customers.

72. For the reasons set forth in the First Count, Plaintiff is entitled to recover the damages sustained by Plaintiff in an amount to be determined at trial.

73. Unless permanently enjoined by the Court, Defendant's actions will continue to cause irreparable harm to Plaintiff for which there is no adequate remedy at law and, as a result, Plaintiff is entitled to permanent injunctive relief.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues that are triable to a jury in this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment in favor of Plaintiff and against Defendant, as follows:

A. A JUDGMENT that Defendant's actions constitute unfair competition and unfair and deceptive trade practices under federal, state, and common law;

B. A JUDGMENT that Defendant's actions constitute literally false and/or misleading statements actionable under federal, state, and common law;

C. An ORDER that this is an exceptional case with the meaning of 15 U.S.C. § 1117 and that Defendant's wrongful acts were knowing and willful;

D. A JUDGMENT awarding Plaintiff compensatory and consequential damages, including disgorgement of Defendant's profits, in an amount to be proven at trial,

14

trebled, in the Court's discretion, and its reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1117 and 6 *Del. C.* § 2533;

E.      An ORDER permanently enjoining Defendant, its officers, directors, employees, agents, servants, licensees, successors, assigns, and all others in active concert or participation with any of them, from making any false and/or misleading statements or representations pertaining to settlement of the Patent Infringement Case or any other subject including Plaintiff and its related companies, their business, and/or their products, except as may otherwise by permitted in a signed settlement agreement between the parties to the Patent Infringement Case; and

F.      Such other and further relief as the Court deems just and equitable.

Dated:  January 26, 2024

OF COUNSEL:

Tammy J. Terry
Califf Cooper
Lisa E. Margonis
Peter C. Schechter
Gopal R. Gannamraj
**OSHA BERGMAN WATANABE & BURTON LLP**
1100 Louisiana Street, Suite 4900
Houston, TX 77002
(713) 228-8600
OLWOWTechDE@obwb.com

**CHIPMAN BROWN CICERO & COLE, LLP**

 */s/ Gregory E. Stuhlman*
Paul D. Brown (#3903)
Gregory E. Stuhlman (#4765)
Ryan M. Lindsay (#6435)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
brown@chipmanbrown.com
stuhlman@chipmanbrown.com
lindsay@chipmanbrown.com

*Attorneys for Plaintiff*

4895-7075-6511, v. 3

15